IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
At Chattanooga

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| ) | No. 1:24-Cr-110 |
| v. ) | Judge: Atchley |
| ) | |
| RUBEN T. WILLIAMS, JR., ) | Magistrate Judge: Steger |
| Defendant. ) | |

## SUPPLEMENTAL BRIEF

Ruben T. Williams Jr., by and through his attorney, and respectfully files this supplemental brief to his Motion to Suppress.

## INTRODUCTION

On October 8, the Court conducted an evidentiary hearing related to the Motion to Suppress filed by Mr. Williams (Doc. 33). During the evidentiary hearing, Mr. Williams showed that at the time he was seized by law enforcement, his vehicle was on private property and thus not "…upon a public highway, street, or road…". Tenn. Code Ann. § 55-9-107. Further, Mr. Williams showed that when law enforcement approached him, he was not operating the vehicle, but instead, he was parked in a parking space. As a result, the vehicle was not being operated as required by the statute. In other words, law enforcement seized Mr. Williams even though a traffic violation had not occurred. In Mr. Williams's view, the seizure was unreasonable, because at the time he was seized, no officer witnessed a traffic violation. Also, when Officer Bryant approached Mr. Williams's vehicle, he did not have the window tint device with him. Although the subjective intent of an officer is immaterial, this fact does

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

Federal Defender Services of
Eastern Tennessee, INC
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

demonstrate that the officers were not thinking closely enough about the window tint law when they seized Mr. Williams.

Conversely, the United States argued the seizure was reasonable, because it in its view, law enforcement could seize Mr. Williams to investigate whether he was about to commit a traffic violation or to determine if he had committed a traffic violation in the past. First, Mr. Williams will discuss the legal contours of traffic stops that involve minor traffic violations. Specifically, Mr. Williams will show that there is a difference between a stop related to a traffic violation and a stop related to a past crime committed by the motorist, or when an officer believes the motorist is actively committing a crime. For example, a motorist who committed a bank robbery and used a vehicle as a means of escape, or a person who is inside a vehicle to case a business to burglarize is fundamentally different than a motorist who may have committed a traffic violation. In other words, the nexus between the unlawful behavior—traffic violation or crime—and the stop is consequential. For instance, an officer may not stop a motorist on the belief that a traffic violation may occur in the future, while an officer may stop a motorist upon reasonable suspicion that the driver may commit a non-traffic crime soon. Further, Mr. Williams will show that the Fourth Amendment analysis does not change based upon how the traffic violation is characterized i.e. civil infraction or misdemeanor.

Second, Mr. Williams will show that when an officer stops a vehicle for a minor traffic violation, the officer must first observe the violation. Third, Mr. Williams will show that an officer may only stop a vehicle on the suspicion that the vehicle's windows are tinted too darkly in violation of Tenn. Code Ann. § 55-9-107 when the vehicle is being operated on the public roads, streets, or highways. Fourth, Mr. Williams will show that Officer Lee did not reasonably believe a window tint violation was occurring at the time of the stop. Relatedly, Mr. Williams will show the seizure of a person for a misdemeanor offense is unreasonable unless it occurs "in-the-presence" of an officer.

Federal Defender Services of Eastern Tennessee, INC
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

Finally, Williams will show that he was unreasonably seized, and as a result, the firearm in this case must be suppressed.

## **CONTOURS OF THE FOURTH AMENDMENT RELATED TO TRAFFIC STOPS**

A traffic stop is a temporary detention of a person that constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Also, the Supreme Court has analogized traffic stops with "Terry stops", because the detention period is brief, unlike a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). As such, the seizure of a person during a traffic stop must be both "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place". *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968) *See also, Rodriguez v. U.S.* 575 U.S. 348, 354 (2015). Historically, a stop is justified at its inception when an officer "possess[es] either probable cause of a civil infraction or reasonable suspicion of criminal activity". *U.S. v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n. 6 (6th Cir.2004)).

But recent case law clarified that an officer may detain a motorist based upon suspicion that the motorist is actively committing a traffic offense at the time of the seizure. *See, Kansas v. Glover*, 589 U.S. 376, 380 (2020). In essence, the Court clarified that an officer does not always need probable cause to stop a person for a traffic violation. On the other hand, regardless of whether the traffic offense is characterized as a civil infraction or a misdemeanor, an officer must either observe a traffic violation or in narrow circumstances an informant must observe the traffic violation. Either way, someone must observe a traffic violation before an officer can effectuate a stop.

I. **The categories of traffic stops.**

As previously stated, the nature of traffic stops can be split into three distinct categories: 1) when a motorist violates a traffic law, 2) when an officer reasonably suspects a motorist committed a

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

**Federal Defender Services of Eastern Tennessee, INC**
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

past crime and 3) when an officer reasonably believes the motorist is actively committing a crime. The most common reason a motorist is stopped is because an officer observes a traffic violation. Further, the case law is clear that a "traffic stop is reasonable when an officer observes a violation of the traffic code". *U.S. v. Richardson,* 267 F.Supp.2d 878, 881 (S.D. Ohio 2003) citing *Whren v. U.S.,* 517 U.S. 806 (1996). The second category, a stop predicated on an officer's belief that a person committed a past crime, is a very narrow category. As an initial matter, the "…governmental interests and the nature of the intrusions…" are "…different when a stop to investigate past criminal activity is involved rather than a stop to investigate ongoing criminal activity". *U.S. v. Hensley*, 469 U.S. 221, 228 (1985). Nevertheless, the Fourth Amendment allows an officer to stop a person related to a "wanted flyer" to determine identification. *Id.* at 229. Although, *Hensley* did not create a rule that Terry stops are allowed "…to investigate all past crimes, however serious…". *Id.* As such, a stop based upon the belief that a person committed a past crime is limited to questions related to the offense or to check identification. *See U.S. v. Hudson*, 405 F.3d 425, 431 quoting *Hensley*, 469 U.S. 221, 229.

An officer that stops a person based upon the belief he is actively committing a crime or is about to commit a crime is at the very heart of *Terry*. Typically, an officer develops reasonable suspicion that a motorist is engaged in criminal activity after the motorist is stopped for a traffic violation. *See*, *United States v. Lott*, 954 F.3d 919, 925 (6th Cir. 2020) (stopped vehicle for illegal travel in left lane, then motorist admitted to having marijuana inside vehicle). In these circumstances, an officer can extend the scope of a traffic stop that was lawful at its inception based upon reasonable suspicion that criminal activity is afoot. *Rodriguez v. United States*, 575 U.S. 348, 354-355 (2015).

On the other hand, at times an officer has reasonable suspicion that a person is committing or about to commit, and the fact that person is inside the vehicle is inconsequential. *See*, *United States v. Betts*, 806 Fed.Appx. 426, 428 (6th Cir. 2020). In *Betts,* an officer received a tip that he investigated to

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

**Federal Defender Services of Eastern Tennessee, INC**
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

determine if a crime was being committed. First, the vehicle was "...in front of a shop that had been frequently burglarized". *Id.* Also, "[w]ithin two minutes, Paulin (the officer) learned that the plate (of the vehicle) was invalid." *Id.* The litany of reasonable suspicion provided by the tipster to the officer is detailed and included that a vehicle was parked on "..the parking lot late at night" even though "…the surrounding businesses were closed" and the fact that the "…vehicle was in the exact place where prior burglaries occurred" "…for over thirty minutes" and during that thirty minutes the driver of the vehicle "..was pacing outside (the vehicle) on a cold night". *Id.* at 430. Again, the fact that a person was inside of a vehicle does not change the ordinary Terry stop analysis. The officer had reasonable suspicion to detain Betts to investigate whether he was about to commit a robbery, whether Betts was inside the vehicle or outside of it. Clearly out of these categories, the stop involved in Mr. Williams's case was based solely on a violation of the traffic code.

## II.     A stop is only reasonable when someone observes a violation of the traffic code.

First, consider the facts in *Glover*, where an officer checked the license plate of a vehicle and found the registered owner of that vehicle license was revoked. *Id.* at 379. The Court found that the officer acted reasonably when he stopped the vehicle to determine if the individual driving the vehicle was the registered owner whose license had been revoked. *Id.* at 386. The centerpiece of the Court's decision, however, was the fact the officer did not observe a fact that "dispel[led] reasonable suspicion. *Id.* "For example, if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the drivers is in her mid-twenties", then an officer's suspicion would not be reasonable. *Id.* Also, the Court in *Glover* "emphasize[d] the narrow scope of our holding." *Id.*

As illustrated in *Glover*, an officer may stop a vehicle to determine if the motorist is actively committing a traffic violation. In other words, the officer in *Glover* observed the motorist driving

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

Federal Defender Services of Eastern Tennessee, INC
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

while his license was revoked, and the officer had reasonable grounds to believe the driver of the vehicle was the registered owner. Again, the reasonableness of the officer's actions in *Glover* is directly tied to the officer's personal observations. Although in narrow circumstances an officer may stop a vehicle on suspicion that the driver is drunk based upon a tip. *See, Navarette v. California*, 572 U.S. 393, 402 (2014).

In *Navarette,* a tipster called 911 to report "…that a vehicle had run her off the road…" *Id.* at 395. As such, *Navarette* is primarily a case about when "…an anonymous tip can demonstrate sufficient indicate of reliability to provide reasonable suspicion to make [an] investigatory stop". *Id.* at 397 quoting *Alabama v. White*, 496 U.S. 325, 327 (2014) (internal quotations omitted). The Court found that the tipster's observations gave the officer reasonable suspicion that the motorist was actively engaged in "…drunk driving as opposed to an isolated episode of past recklessness." *Id.* at 401 As such, the officer would not have been able to stop the vehicle based upon an isolated episode of past recklessness. There simply isn't a case that stands for the proposition that an officer can stop a vehicle based upon the belief that a person previously violated a traffic law or might do so in the future.

Also, the "in-the-presence" requirement that an officer can only seize a person for a misdemeanor if it occurs in his presence, provides additional support to Mr. Williams's argument that he was unreasonably detained. Mr. Williams asserts that the "in-the-presence" rule is embodied in the Fourth Amendment. *See*, *Victor Javier Grandia Gonzales v. United States*, 604 U.S. _____ (2025). Moreover, Mr. Williams asserts Tennessee's "in-the-presence" required an officer to observe a minor traffic violation.

In Tennessee, the in-the-presence rule required "…by the exercise of one or more of his five senses, and when he thus acquires direct personal knowledge of a criminal act he may lawfully arrest

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

Federal Defender Services of Eastern Tennessee, INC
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

the person committing it." *Williams v. State*, 506 S.W.2d 193, 197 (Tenn. Ct. App. 1973) citing *Nelson v. State*, 219 Tenn. 680, 690 (1967). Conversely, "and an offense is not committed in the presence of an officer when its commission is communicated to him by another". *Id.* citing *Hurd v. State*, 108 S.W. 1064, 1067 (Tenn. 1907). In *Nelson*, the traffic violation was "[u]nlawfully displaying or using a license plate on a motor vehicle other than the one for which it was issued is a misdemeanor." 506 S.W.2d at 197. As such, relevant Tennessee case law demonstrates that the in-the-presence rule applied to traffic violations. Also, the officer in *Nelson* did not have personal knowledge that there was in fact a traffic violation related to the license plate. *Id.* Consequently, the traffic offense did not occur in the presence of the officer. *Id.* However, the Court affirmed the conviction in *Nelson* because the officer picked up a discarded bag that contained drugs, so a search did not occur. *Id.*

In a 28 U.S.C. §1983 lawsuit, the District Court for the Middle District of Tennessee had an opportunity to apply Tennessee's in-the-presence rule. *Hunt v. Wayne County*, No. 1:10-Cv-35, WL 279482 (2012). The Court in *Hunt* found that an alleged assault committed by a threat directed at law enforcement officer over the phone had not been made "in the officer's presence". *Id.* at 3. As such, the Court found "…that a reasonable jury could determine that Defendant's violated Plaintiff's constitutional rights by arresting him without a warrant and that such rights were clearly established at the time." *Id.* at 4. Officer Lee did not observe Mr. Williams violating Tennessee's window tint law, and as such, the seizure was unreasonable.

## TENN. CODE. ANN. § 55-9-107

As the evidence showed, Mr. Williams was purportedly stopped for a violation of Tennessee's window tint law. As an initial matter, Officer Lee correctly stated that the parking lot of Hamilton Place Mall was private property. Consequently, Officer Lee did not believe that the parking lot was a public highway street or road within the meaning of the statute. Also, the statute contains requirements

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

Federal Defender Services of Eastern Tennessee, INC
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

that must be met before an officer can detain a motorist on the belief that the window tint is too dark. As clearly stated, "It is probable cause for…. law enforcement officer…to detain a motor vehicle *being operated on the public roads, streets or highways* of this state when the officer has reasonable belief that the motor vehicle is in violation of "subdivision" (a)(1). Tenn. Code Ann. § 55-9-107(b)(2)(c) (emphasis added). As the evidence showed, at the time of the seizure Mr. Williams's vehicle was parked on private property. As such, Mr. Williams was not "operat[ing] a vehicle on the public roads, streets, or highways" of Tennessee. *Id.* Consequently, by the plain terms of the statute, the seizure of Mr. Williams was not lawful at its inception.

Moreover, the plain language of the statute does not allow an officer to stop a vehicle on the belief that a violation of the window tint law occurred in the past. Further, the language of the statute employs the present construction of "operate". Specifically, the statute states, "It is unlawful for any person to operate, upon a public highway, street or road" and an officer can detain a motorist when a vehicle is "…being operated on the public roads, streets, or highways of this state…'. *See,* Tenn. Code Ann. § 55-9-107(a). Tenn. Code Ann. § 55-9-107(6)(b)(2)(c) At no point does the statute use a past tense construction, which supports Mr. Williams's argument that the statute only applies when a violation of the statute is occurring at the time of the stop. Also, while the window tint law may be a continuing traffic violation, a violation only occurs when a vehicle is being operated on the public roads, streets or highways of Tennessee. In words, the window tint offense ends when a vehicle is on private property.

### Officer Lee did not stop Mr. Williams based on a reasonable mistake of law.

At times, the law can be unwieldly. For example, consider how a complicated legal issue can divide the very best lawyers in America. Further consider how complicated legal issues are often resolved by a divided Supreme Court. As such, there are times when a stop is valid when officer

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

**Federal Defender Services of Eastern Tennessee, INC**
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

objectively makes reasonable mistake of law or fact. *See, Hein v. North Carolina*, 574 U.S. 54 (2014). In *Heien*, an officer stopped a vehicle because one brake light was out. *Id.* at 59. However, the North Carolina statutory scheme related to brake lights was convoluted. *Id*. For example one statute referenced "…a stop lamp in the singular…", while another code section "…require[ed] that all originally equipped rear lamps be functional." *Id.* (internal quotations omitted). The Court found that the officer reasonably believed that both brake lights needed to be functional and thus the seizure was lawful. *Id.* at 68. But *Hein* is limited to times when an officer makes an "…objectively reasonable" mistake of law. *Id.* at 66. As noted in the concurrence, an objectively reasonable mistake of law will most often occur when "the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work…". *Id.* at 70 (Kagan, J., and Ginsburg, J., concurring). *See also, United States v. Stevenson*, 43 F.4th 641 (6th Cir. 2022) (reasonable interpretation of ambiguous statute that involved "sidewalk area").

At the suppression hearing, Officer Lee, the officer who spotted the darkly tinted windows of Mr. Williams's Altima, correctly identified the parking lot of Hamilton Place Mall as private property. Further, Officer Lee stated he would not have stopped a vehicle being driven on the front yard of a home. As such, Officer Lee simply did not stop Mr. Williams based on an objectively reasonable mistake in law or fact. Further, the window tint statue is not ambiguous, as it clearly only applies when a vehicle is being operated on a public road.

## CONCLUSION

Stated simply, Mr. Williams was stopped for a violation of Tennessee's traffic code, even though a traffic violation did not occur. As such, the seizure was unreasonable. In its argument, the United States conflated case law related to Terry stops with traffic stops. Sure enough, a traffic stop is a type of Terry stop, but it's a Terry stop based upon a traffic violation. Otherwise, an officer may

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

**Federal Defender Services of Eastern Tennessee, INC**
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

conduct a Terry stop under the ordinary rules of *Terry*. In those instances, the vehicle is unrelated to criminal activity. In other words, an officer may conduct a Terry stop whether the suspect is walking on a sidewalk or driving a vehicle on a road.

For example, an officer may stop a vehicle if he suspects the driver is actively committing a crime. In *Navarette* the officer stopped a truck on suspicion that the driver was actively driving under the influence. However, the Court highlighted that driving under the influence of alcohol is a serious offense, and that the officer could reasonably suspect the offense was actively occurring at the time of the stop. The result of *Navarette* would have been different if the tipster reported a minor traffic infraction. 572 U.S. 393, 403-404. Although in limited circumstances an officer may stop a vehicle under the ordinary rules of *Terry* based on suspicion that the driver committed a prior crime. In these circumstances, the officer already has probable cause to arrest the person for committing a prior crime. As such, the officer can stop a vehicle to inquire about the prior crime and to identify the vehicle's occupants. *Hensley*, 469 U.S. 221, 229.

Remember, Officer Lee seized Mr. Williams based upon an alleged violation of the traffic code. Officer Lee did not suspect Mr. Williams had committed a past crime, or that Mr. Williams was actively committing a crime, or that Mr. Williams was about to commit a crime. As such, the classification of the window tint law as a misdemeanor is inconsequential to the Fourth Amendment analysis. Moreover, Tennessee's in-the-presence rule required a window tint violation to occur in the presence of an officer. Simply put, the Fourth Amendment does not allow an officer to stop a vehicle based on the belief that the driver previously broke the speed limit, or that the driver was about to break the speed limit. Consequently, the officers in this case, although fine law enforcement officers, acted unreasonably in this instance when they seized Mr. Williams. As such, the firearm must be suppressed.

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF

**Federal Defender Services of Eastern Tennessee, INC**
One Central Plaza, suite 600
835 Georgia Avenue
Chattanooga, TN 37402

Respectfully submitted,

FEDERAL DEFENDER SERVICES OF
 EASTERN TENNESSEE, INC.

By: *s/ J. Damon Burk*
J. Damon Burk
Assistant Federal Defender
605 Chestnut Street Suite 1310
Chattanooga, Tennessee 37450
(423) 756-4349
WA Bar # 41352

RUBEN T. WILLIAMS JR. SUPPLEMENTAL BRIEF