# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:24-cr-110 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| RUBEN T. WILLIAMS, JR. | ) | Magistrate Judge Steger |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Report and Recommendation [Doc. 40] of U.S. Magistrate Judge Christopher H. Steger, recommending that Defendant's Motion to Suppress [Doc. 16] be denied. Defendant has filed Objections [Doc. 44] to the Report and Recommendation ("R&R"), and the Government has responded [Doc. 47]. For reasons that follow, Defendant's objections will be **OVERRULED**, the Report and Recommendation [Doc. 40] will be **ACCEPTED AND ADOPTED**, and Defendant's Motion to Suppress [Doc. 16] will be **DENIED**.

## I. STANDARD OF REVIEW

The Court is required to perform *de novo* review of any objections to an R&R. 28 U.S.C. § 636(b); *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) ("It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."). The Court can accept, modify, or reject the findings or recommendations – in whole or in part. *United States v. Robinson*, 2007 WL 2139635, at *1 (E.D. Tenn. July 23, 2007).

## II. FACTUAL AND PROCEDURAL BACKGROUND

While Defendant has raised two objections to Magistrate Judge Steger's findings of fact, the vast majority of relevant facts are undisputed. Accordingly, the Court incorporates the R&R's factual recitation as follows:

1

On December 20, 2023, Chattanooga Police Department ("CPD") Gun Team Investigator Ethan Lee was patrolling inside the Hamilton Place Mall. Investigator Lee noticed Defendant in the mall wearing a cross body satchel, and recognized him as a part of the Rollin' 40 Crips criminal street gang. Investigator Lee testified that, in his experience, gang members will conceal firearms or narcotics in these types of bags. While observing Defendant in the mall, Investigator Lee conducted a query of Hamilton County, Tennessee records, and learned that Defendant was a convicted felon. Investigator Lee was also communicating with other officers, who were in patrol cars outside of the mall.

Investigator Lee watched Defendant leave the mall and enter the driver's seat of a maroon Nissan Altima. Investigator Lee then got into a patrol car of one of his fellow officers, Officer Darnell Bryant. While watching Defendant in his car, Investigator Lee noticed that Defendant's car windows appeared to have darker tint than what is permitted by Tennessee law. Investigator Lee testified that he watched Defendant begin driving the vehicle through the parking lot, and that the car "moved a couple of rows over." *See* Oct. 8, 2025, Hrg. Tr. at 12.

Officer Bryant and Investigator Lee then pulled up next to Defendant's vehicle and performed a traffic stop. Other officers arrived on the scene shortly thereafter, including Officer Gavin Moody. After stopping Defendant's vehicle, Officer Bryant approached the passenger side and asked Defendant to roll down the window. Officer Bryant told Defendant that he was being stopped because his window tint was too dark. Officer Bryant asked Defendant to step out of the car, which he testified was his typical practice when he finds that windows are too dark,

2

because he does not feel safe when he cannot see through the windows. Officer Bryant walked with Defendant to the rear of the vehicle, where Officer Bryant then stated that the car smelled like weed. *See* Oct. 8, 2025, Hrg. Tr. at 38. Officer Moody testified that he also detected an odor of marijuana coming from the vehicle.

Officer Bryant and Officer Moody then conducted a search of the vehicle and discovered a loaded firearm with an extended magazine in a black satchel on the front passenger seat. Officer Moody took the satchel and firearm to a patrol vehicle. The officers did not find any marijuana in the vehicle. Officer Bryant then read Defendant his Miranda rights. Officer Bryant also asked Defendant when he last smoked in the vehicle, to which Defendant responded that he smoked "earlier." *See* Oct. 8, 2025, Hrg. Tr. at 39. The officers tested the window tint after the stop, and found that the front driver's side window was 21%, and the back driver's window was 22%. Defendant was arrested and charged with possession of a firearm by a convicted felon.

[Doc. 40 at 1-3].

Judge Steger conducted an evidentiary hearing on October 8, 2025, post-hearing briefing was submitted, and the Report & Recommendation [Doc. 40] was entered on February 24, 2026. Defendant was granted an extension of time to file objections, and the Government was granted an extension of time to respond. [Docs. 42 & 46]. The matter is now ripe for review.

### III.    SUMMARY OF REPORT & RECOMMENDATION

Judge Steger found that officers had a reasonable, articulable suspicion that Defendant's vehicle was in violation of Tennessee's window tint law, T.C.A. § 55-9-107(a)(1). First, the Magistrate Judge found that the officers appropriately relied on their experience in forming a

reasonable belief that the windows of Defendant's vehicle were too dark. [Doc. 40 at 4-5]. Judge Steger also rejected Defendant's argument that he could not have been in violation of the window tint law because he was on private property, rendering the initial stop unreasonable under the Fourth Amendment. [*Id.* at 6-7]. While it is undisputed that the Hamilton Place Mall parking lot is private property, the streets and highways surrounding the mall are public. [*Id.*]. Judge Steger thus reasoned that officers had "some objective manifestation" that Defendant was, or was about to be, engaged in criminal activity. [*Id.* at 7].

Next, Judge Steger rejected Defendant's argument that his seizure by officers for the window tint violation was unreasonable because the violation did not occur "in the presence" of the officers. [*Id.* at 10]. Defendant argued that the officers did not personally observe a violation of the window tint statute because they never saw Defendant operate the vehicle on a public road. The R&R nonetheless found that the officers personally observed a possible window tint violation, such that they could initiate a *Terry* stop, and had personal knowledge of the smell of marijuana, allowing them to search the vehicle. [*Id.* at 11]; *see Terry v. Ohio*, 392 U.S. 1 (1968).

Third, the R&R addresses Defendant's argument that the search of the vehicle did not comport with the Fourth Amendment because (1) the odor of marijuana could only have come from the Defendant's person, not his vehicle; and (2) the search of the vehicle did not reveal any marijuana. [*Id.* at 12]. The Magistrate Judge rejected both arguments, neither of which Defendant renews in his Objection. [*Id.*].

Judge Steger ultimately found that officers permissibly initiated a *Terry* stop based on a reasonable suspicion that Defendant violated or was about to violate Tennessee's window tint law. [*Id.* at 14]. After detecting an odor of marijuana, they had probable cause to search the vehicle

without a warrant. [*Id.*]. The *Terry* stop thus ripened into a lawful search supported by probable cause, rendering the firearm recovered from the vehicle admissible as evidence. [*Id.*].

### IV. DEFENDANT'S OBJECTIONS

#### A. Objections to Findings of Fact

1. <u>The Magistrate Judge's finding as to when Defendant's vehicle stopped moving was not in error.</u>

First, Defendant says the R&R's "implies that Mr. Williams stopped his vehicle because law enforcement initiated a traffic stop." [Doc. 44 at 1]. Defendant shows that the vehicle was already stopped "more or less" inside a parking spot before law enforcement approached the vehicle. [*Id.*]. The Government responds in general terms, suggesting there is no basis to question the Magistrate Judge's findings on the evidence. [Doc. 47 at 1-2].

The Court does not read the R&R as implying that the vehicle parked in response to a law enforcement traffic stop. The Magistrate Judge merely reasoned that the traffic stop was like any other in the sense that a vehicle has to be stopped for officers to conduct one. [Doc. 40 at 7-8]. But the R&R also assumes that Defendant stopped his car voluntarily before police approached him. It notes, for example, that officers saw the car "move a couple of rows over" from "where it was initially parked," it notes the body-cam footage showing Defendant sitting in the driver's seat with the car turned on, and reasons it was "plausible" to believe "Defendant was going to <u>resume</u> driving." [*Id.* at 6, 7, 8] (emphasis added). It is clear from the R&R that the Magistrate Judge understood that the vehicle had stopped voluntarily before officers approached. Moreover, the assertion that Defendant was parked when officers approached has little relevance to whether it was reasonable for the officers to believe he was leaving the mall. It is perfectly reasonable to infer that a person who is in a shopping mall, leaves the mall, walks to his car, starts the engine, drives

a few rows over, parks, and sits in the car with the engine running is about to leave the mall. This objection is therefore **OVERRULED**.

     2.  <u>The Magistrate Judge accurately explained that officers observed Defendant's vehicle operating exclusively on private property.</u>

Defendant argues that "the Report does not clearly state that the section of Hamilton Place Mall where officers observed Mr. Williams operating a vehicle was entirely on private property." [Doc. 44 at 2]. This objection is meritless. The R&R repeatedly acknowledges that Defendant was observed on private property. *See* [Doc. 40 at 6] ("It is uncontroverted that the Hamilton Place Mall parking lot, where Defendant was parked, is in fact owned by a private company."). At no time does it suggest Defendant was seen driving on a public road. Defendant's objection is **OVERRULED**.

**B. Objections to Conclusions of Law**

     1.  <u>The Magistrate Judge applied the correct legal framework to evaluate the *Terry* stop.</u>

Defendant concedes that "a *Terry* stop can occur when an officer has some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." [Doc. 44 at 3] (punctuation and citation omitted). Indeed, it is well-settled that "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30). Defendant nonetheless argues the Magistrate Judge erred by assuming that "criminal activity" includes traffic violations, like the window tint violation officers investigated here. [*Id.* at 3-4]. Defendant argues that a large body of Fourth Amendment law distinguishes between a stop based on criminal activity

6

and one based on a traffic violation, and that officers must generally have probable cause to believe a traffic violation has occurred in order to conduct a lawful stop. [*Id.*]. Defendant further contends the R&R fails to cite any case involving a traffic stop based on a belief that a motorist would commit a traffic violation in the future. [*Id.*].

The Sixth Circuit "has developed two separate tests to determine the constitutional validity of vehicle stops." *United States v. Collazo*, 818 F.3d 247, 254 (6th Cir. 2016). "Consistent with the Fourth Amendment, a police officer may stop a motorist when he possesses probable cause of a civil infraction or has reasonable suspicion of criminal activity." *King v. City of Rockford*, 97 F.4th 379, 390-91 (6th Cir. 2024) (citing *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016)); *Collazo*, 818 F.3d at 253-54 ("[A]n officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation."). The Sixth Circuit has acknowledged that its "case law has been inconsistent with respect to the requisite level of suspicion required to justify a stop based on suspected civil infractions," *id.* at 391, n.3, but any lack of clarity is immaterial here for several reasons.

First, there is no dispute that the suspected infraction was a misdemeanor. T.C.A. § 55-9-107(d) ("It is a Class C misdemeanor . . . for any person to otherwise violate any provisions of this section."). And the Sixth Circuit has "emphasize[d] that a seizure for an ongoing violation of *any* crime – no matter how minor – is governed by the standard of reasonable suspicion, not probable cause." *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (holding "reasonable suspicion of an ongoing misdemeanor *is* adequate justification" for a traffic stop)); *see also United States v. Clayton*, 2021 WL 3121371, at *2 (6th Cir. July 23, 2021) ("The reasonable suspicion standard governs the legality of traffic stops when the suspected violation is a criminal offense rather than a civil infraction.").

Second, the Sixth Circuit applies a reasonable suspicion standard to "ongoing" misdemeanor traffic violations. And the Sixth Circuit has applied this standard to a suspected violation of the exact statute at issue here, T.C.A. § 55-9-107(a). *See United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020). In *Shelton*, the court held that "in the context of 'ongoing' traffic violations – like a blocked license plate, or more relevantly, an overly tinted window . . . the less demanding 'reasonable suspicion' standard applies." *Id.* at 219 (citation omitted); *see also United States v. Brooks*, 987 F.3d 593, at 598 (6th Cir. 2021) ("Our cases also permit vehicle stops based on a mere 'reasonable suspicion' that a felony has occurred or that a misdemeanor is occurring, analogizing these temporary stops to the well-known '*Terry* stop' from *Terry v. Ohio*.").

In *Shelton*, the Sixth Circuit held that "an officer reasonably suspects a window-tint violation if the officer is familiar with their state's tint law and estimates that a vehicle is tinted substantially darker than that law permits." *Id.* The court characterized the suspected violation of T.C.A. § 55-9-107 as "ongoing" and applied the reasonable suspicion standard to evaluate the stop, affirming the district court's denial of defendant's motion to suppress. *Id.*; *see also Mitchell v. Hamilton Cnty. Govt.*, 2023 WL 11979764, at *14 (E.D. Tenn. March 29, 2023) (applying reasonable suspicion standard to stop for suspected violation of Tennessee's window tint law); *United States v. Braden*, 2012 WL 3552854, at *5 (W.D. Tenn. July 6, 2012), report and recommendation adopted, 2012 WL 3552851 (W.D. Tenn. Aug. 16, 2012) (suspected violation of T.C.A. § 55-9-107(a)(1) "constitutes an 'ongoing' violation and thus falls under the reasonable suspicion standard"). Based on *Shelton*, the Magistrate Judge correctly applied the reasonable suspicion standard to the initial traffic stop of Defendant's vehicle.

Relatedly, the Court rejects Defendant's contention that officers could not have formed a reasonable suspicion that a traffic violation was ongoing given that Defendant was parked on

8

private property at the time of the initial stop. [Doc. 44 at 6]. Tennessee's window tint law makes it unlawful for a person to "operate, upon a public highway, street or road, any motor vehicle in which any window . . . [h]as a visible light transmittance of less than thirty-five percent (35%)." T.C.A. § 55-9-107(a)(1). It is undisputed that the parking lot in which Defendant was stopped was private property. *See* [Doc. 40 at 6].

As the Magistrate Judge explained, an investigatory stop can be justified "by some objective manifestation that the person stopped is, *or is about to be*, engaged in criminal activity." *Cortez*, 449 U.S. at 417 (emphasis added); *see United States v. Akinyemi*, 101 F. App'x 109, 111 (6th Cir. 2004) (officers "had a reasonable suspicion that [defendant] was or was about to be engaged in drug activity"); *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) ("[A] brief investigative stop, or *Terry* stop, by an officer who is able to point to specific and articulable facts justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure." (cleaned up, citation omitted)). "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). "When determining whether an officer had reasonable suspicion to conduct a *Terry* stop, a court considers the totality of the circumstances." *United States v. Cline*, 229 F. Supp. 3d 691, 697 (E.D. Tenn. 2017). As the Government notes, *Terry* itself involved an officer's suspicion of future criminal activity. [Doc. 47 at 4].

Here, officers observed Defendant in the mall. They then saw him leave the mall, get in his car, and drive it a few rows over before coming to a stop in another parking spot. They reasonably (and correctly) suspected his windows were improperly tinted. To leave the mall, Defendant would

have had to enter public roadways. Whatever Defendant was doing while parked, his vehicle did not materialize in the Hamilton Place Mall parking lot, nor is it probable that he planned to leave the vehicle there indefinitely. On an abstract theoretical level, it is of course conceivable that had he not been stopped, Defendant would have had the car towed or the window tint somehow removed in the parking lot. But "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). The very nature of an ongoing violation is that it is not premised on specific, momentary conduct, such as swerving across a traffic lane or speeding. An "ongoing" violation is generally a persisting condition of either vehicle or driver. The violation continues the moment other factual predicates are met, *e.g.*, the driver starts operating a statutorily non-compliant vehicle. That the violation was temporarily latent while the car was on private property does not change its nature. Defendant appeared to be leaving the mall's private property, and officers reasonably suspected he would violate Tennessee's window tint law the moment he did so.

2. The Magistrate Judge's conclusions do not contradict T.C.A. § 55-9-107.

Next, Defendant contends that the Magistrate Judge erred by concluding the traffic stop was permissible despite the vehicle not being operated "upon a public highway, street or road," as required by the statute. Again, Tennessee's window tint law makes it unlawful to operate an overly tinted window on "a public highway, street or road." T.C.A. § 55-9-107(a)(1). The statute further states that "it is probable cause for a . . . law enforcement officer of this state to detain a motor vehicle being operated on public roads, streets or highways of this state when the officer has a reasonable belief that the motor vehicle is in violation of subdivision (a)(1), for the purpose of conducting a field comparison test." T.C.A. § 55-9-107(c). Defendant argues that the statute does

10

not authorize an officer to detain a motor vehicle for merely attempting to drive on a public roadway with excessively tinted windows and that the Magistrate Judge's holding is thus "little more than a wholesale rewriting of the relevant statute." [Doc. 44 at 6].

Defendant's argument fails for the reasons explained above. An investigatory stop is constitutionally permissible when an officer has a reasonable suspicion of an ongoing traffic violation, supported "by some objective manifestation that the person stopped is, *or is about to be*, engaged in criminal activity." *Cortez*, 449 U.S. at 417. Based on the officer's observations, it was entirely reasonable for them to suspect that the Defendant drove to the mall and was heading for a public roadway. That his vehicle was, in short, in ongoing violation of Tennessee's window tint law and that he was about to commit a misdemeanor. And this is true regardless of whether he was fully parked when officers initiated contact.

Moreover, how the Tennessee legislature defines probable cause with respect to a window tint violation does not change what the Fourth Amendment requires to establish a reasonable suspicion of an ongoing traffic violation. First because probable cause is a more demanding standard and thus logically includes reasonable suspicion. And second because the Fourth Amendment, as interpreted by the Supreme Court, sets the constitutional requirement, not Tennessee statute. Defendant cites no law to the contrary and his objection will be **OVERRULED**.

3. The Magistrate Judge did not rely on evidence not in the record regarding the object of the *Terry* stop.

Next, Defendant argues that at the suppression hearing, "no officer articulated the belief that Mr. Williams had either previously operated the vehicle on a public road or that he was about to operate a vehicle on a public road." [Doc. 44 at 8]. According to Defendant, "no officer testified that Mr. Williams was stopped based on the belief that he was about to commit a traffic infraction."

11

[*Id.* at 7]. But Defendant never explains why the lack of officer testimony on this issue is problematic for the constitutionality of the search, and cites no authority at all for the proposition that officer testimony was required.

To the contrary, it is well-established that an officer's subjective motivation in initiating a traffic stop is irrelevant for Fourth Amendment purposes. "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever the subjective intent.*" *Whren v. United States*, 517 U.S. 806, 814 (1996). Officer Lee and Officer Bryant both testified that Defendant's vehicle was stopped due to suspected excessive window tint. [Doc. 43 at 14, 36]. And there appears to be no dispute that they raised the window tint with Defendant when they stopped him. Still, the Magistrate Judge observed that based on the Government's briefs and testimony, the officers may have been "motivated by another purpose, *to wit*, that Defendant is a convicted felon, is a member of a gang, and perhaps had a weapon or drugs in his satchel." [Doc. 40 at 6]. "But the subjective motivations of the officers do not matter for Fourth Amendment purposes so long as it was objectively reasonable for the officers to believe that [Defendant] violated the traffic laws." *United States v. Noel*, 2024 WL 4825336, at *2 (6th Cir. Nov. 19, 2024); *United States v. Miller*, 413 F. App'x 841, 843 (6th Cir. 2011) ("[E]ven if [the officer] used the failure to signal as a pretext to initiate a traffic stop of an otherwise-suspicious vehicle, this fact does not undermine the probable cause that existed to make the stop if [the defendant] failed to signal his turn.").

The Court finds no error in the R&R's conclusion "that it was reasonable for officers to assume that Defendant had or was about to drive on a public road with unlawful window tint," [Doc. 40 at 9], and Defendant's objection is **OVERRULED**.

12

4.  <u>The Magistrate Judge did not err in finding that all facts relevant to a</u>

<u>"reasonable suspicion" occurred "in the presence" of officers.</u>

Defendant next objects to the Magistrate Judge's conclusion that a window tint violation occurred in the presence of law enforcement. [Doc. 44 at 9]. Defendant argues that, because a window tint violation is a misdemeanor offense, a violation of the statute had to occur in an officer's presence to justify the stop. [*Id.*].

The portion of the R&R that Defendant appears to challenge states: "Here, the officers did not receive a phone call saying that there was a car at the Hamilton Place Mall with overly tinted windows or that smelled of marijuana – they personally saw and observed <u>the violations</u> which led to the stop, arrest, and warrantless search." [Doc. 40 at 12] (emphasis added). But the very next sentences clarifies: "The Court finds that the officers personally observed Defendant driving his car in the Hamilton Place Mall parking lot, and that they knew that he would be committing a misdemeanor (i.e., window tint violation) as soon as he exited the parking lot and entered a public road." [*Id.*]. The first sentence is perhaps too broadly worded, but the Magistrate Judge's proposed finding is clear: the officers personally saw the tinted windows of Defendant's vehicle and reasonably believed he would be committing a violation of Tennessee law when he left the mall parking lot. Modification of the R&R is not necessary to clarify something that is already clear from context. For avoidance of doubt, the Court finds that nothing in the record suggests the officers personally witnessed Defendant driving his vehicle on a public roadway.

As the R&R explains, the Sixth Circuit "has held that the offense need not even have been committed in the officer's presence to satisfy the Fourth Amendment – probable cause alone is sufficient to seize a person suspected of a misdemeanor." *United States v. Jones*, 55 F.4th 496, 500 (6th Cir. 2022). Second, the Magistrate Judge noted that the officers here had probable cause to

13

conduct a brief *Terry* stop to check the window tint, based on a reasonable belief that Defendant was about to operate his vehicle on a public road. [Doc. 40 at 10-11]. Third, the R&R finds that officer Lee personally observed Defendant drive the vehicle through the parking lot with what appeared to be overly tinted windows. [*Id.* at 11].

The Court understands that no officer observed Defendant operating a vehicle with excessively tinted windows on a public road. They observed him operating a vehicle with excessively tinted windows on private property. Having left the mall and gotten into his car, he appeared to be leaving, which would have required him to operate his vehicle on public roads. All of the facts giving rise to a reasonable suspicion of an ongoing traffic violation were within the officers' direct personal knowledge. The information that led to the investigatory stop was not gleaned from tips or 911 calls, or otherwise secondhand information. It came from the officers' own visual observations. Moreover, the suspected window tint violation was not the basis for Mr. Williams's arrest, only for the traffic stop. *See Gonzalez v. United States*, 145 S. Ct. 529, 531 (Feb. 24, 2025) (observing that the Supreme Court has "left open whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor *arrests*" (citation and punctuation omitted) (emphasis added)). Even if the Fourth Amendment incorporates an "In-the-Presence" Rule, that rule appears to apply to warrantless arrests for misdemeanor offenses. Defendant cites no case suggesting the "In-the-Presence Rule" applies to investigative stops, and thus has not demonstrated that the Magistrate Judge erred. This objection is **OVERRULED**.

5. <u>The Magistrate Judge did not err in applying the "reasonable suspicion" standard to a stop to investigate a possible window tint violation.</u>

Finally, Defendant urges that the R&R wrongly concludes that reasonable suspicion is the appropriate standard for evaluating the initial stop. As discussed above, the Sixth Circuit has

characterized a violation of Tennessee's window tint statute as an ongoing traffic violation. And the court has repeatedly held that officers need only have a reasonable suspicion of an ongoing traffic violation to initiate an investigatory stop. Defendant's contention that probable cause is required for a suspected violation of Tennessee's window tint statute conflicts with the Sixth Circuit's holding in *United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020).

## V.   CONCLUSION

Accordingly, Defendant's Objections [Doc. 44] to the Report and Recommendation [Doc. 40] are **OVERRULED**. The Report and Recommendation [Doc. 40] is **ACCEPTED** and **ADOPTED** and Defendant's Motion to Suppress [Doc. 16] is **DENIED**.

SO ORDERED.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

15